UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
IN THE MATTER OF

     ESTABLISHMENT INSPECTION OF:       File No. 21-M-726 (LB)

ROYAL HOME IMPROVEMENTS, INC.
2317 Avenue K
Brooklyn (Kings County), New York 11210

1191 E. 22nd Street
Brooklyn (Kings County), New York 11210

1485 E. 21st Street
Brooklyn (Kings County), New York 11210
--------------------------------------------------------------

## EX-PARTE APPLICATION FOR INSPECTION WARRANT UNDER THE OCCUPATIONAL SAFETY AND HEALTH ACT OF 1970

TO THE UNITED STATES DISTRICT COURT:

     MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, hereby applies *ex parte* for an inspection warrant pursuant to Section 8(a) of the Occupational Safety and Health Act of 1970, (29 U.S.C. § 651, *et seq.*), ("the Act"), and the regulations issued pursuant thereto (29 C.F.R. Part 1903), for the inspection and investigation of the workplaces described in the caption above.

     In support of this application, the Secretary of Labor states as follows:

     1.     Royal Home Improvements, Inc. ("Royal Home") operates a construction company out of its office located at 3004 Avenue L, 2nd Floor, Brooklyn, New York. Royal Home is covered by the Act because it is engaged in a business affecting commerce within the meaning of Section 3(3) of the Act, 29 U.S.C. § 652(3). It also employs employees at various workplaces and is an "employer" within the meaning of Section 3(5) of the Act, 29 U.S.C. § 652(5).

2.     The above-referenced workplaces have been selected for programmed inspections in accordance with OSHA's Regional Emphasis Program – Construction Work Sites - OSHA Directive No. 2019-06 ("REP").  *See* Declaration of Janet Drogowski ("Drogowski Decl.") ¶¶ 7-12, 15; Declaration of James Ng ("Ng Decl.") ¶¶ 3-7.

3.     On a recent attempt to inspect another Royal Home workplace pursuant to the REP, an OSHA Compliance Officer was denied entry and was told that Royal Home's policy and practice is to require OSHA to make an appointment to return at a pre-set date and time before being allowed to conduct an inspection. *See* Declaration of Zhao Hong Huang ("Huang Decl.") ¶¶ 4-6.  In addition, Royal Home has posted signs at all three of the above-referenced workplaces notifying OSHA that it must make an appointment prior to being allowed to inspect.  *See* Ng Decl. ¶¶ 6, 8.

4.     Requiring OSHA to make appointments prior to conducting inspections is strictly prohibited by Section 17(f) of the Act.  Section 17(f) provides that "[a]ny person who gives advance notice of any inspection to be conducted under this Act, without authority from the Secretary or his designees, shall, upon conviction, be punished by a fine of not more than $1,000 or by imprisonment for not more than six months, or by both." 29 U.S.C. § 666(f).

5.     Although OSHA has not yet attempted to open inspections of the three above-referenced workplaces, and thus the employer has not yet refused OSHA entry to inspect these workplaces, an anticipatory warrant is necessary.  Pursuant to 29 C.F.R. § 1903.4(b)(1), OSHA may seek a warrant in advance of an attempt to inspect when "the employer's past practice either implicitly or explicitly puts the Secretary on notice that a warrantless inspection will not be allowed."  Here, Royal Home has consistently

maintained that it will not allow OSHA to inspect without a pre-set appointment. *See* Huang Decl. ¶¶ 4-5; Ng Decl. ¶ 6, 8. Further, Royal Home has posted signs at all three of the above-referenced workplaces instructing OSHA to call to make an appointment to inspect. *See* Ng Decl. ¶ 6, 8. It is the judgment of the Assistant Area Director and the Office of the Solicitor that the issuance of a pre-inspection warrant is justified here and appropriate under 29 C.F.R. § 1903.4(b). *See* Drogowski Decl. ¶ 15.

6.      In passing the Occupational Safety and Health Act, Congress "declare[d] it to be its purpose and policy . . . to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). Among the ways that Congress implemented to achieve this purpose was to authorize the Secretary of Labor "to set mandatory occupational safety and health standards." 29 U.S.C. § 651(b)(3).

7.      In order to enforce the Act and the Secretary's health and safety standards, Section 8(a) of the Act gives the Secretary the authority to enter, inspect, and investigate places of employment, stating:

> In order to carry out the purposes of this Act, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized
>
> (1)      to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and
>
> (2)      to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials, therein, and to question privately any such employer, owner, operator, agent or employee.

29 U.S.C. § 657(a).

8.     In *Marshall v. Barlow's Inc.*, 436 U.S. 307 (1978), the Supreme Court ruled that the Fourth Amendment requires warrants for objected-to inspections conducted pursuant to Section 8(a) of the Act. Following *Camara v. Municipal Court*, 387 U.S. 523, 528-529 (1967) and *See v. City of Seattle*, 387 U.S. 541, 543 (1967), the Court held that this warrant requirement is necessary to "provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." (footnotes omitted). *Barlow's*, 436 U.S. at 323; *See Martin v. Int'l Matex Tank Terminals-Bayonne*, 928 F.2d 614, 621 (3d Cir. 1991).

9.     The liberal probable cause test to be applied in administrative warrant applications was explained by the Court as follows:

> Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation, but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular (establishment)." *Camara v. Municipal Court*, *supra*, 387 U.S. at 538. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights (footnotes omitted).

*Barlow's*, 436 U.S. at 321.

10.     Under the authority of Section 8(g)(2) of the Act to prescribe "regulations dealing with the inspection of an employer's establishment" the Secretary of Labor has promulgated 29 C.F.R. § 1903.4, authorizing OSHA to obtain compulsory process, including *ex parte* warrants, to conduct an inspection when faced with the refusal of the

employer to permit OSHA to perform its duties. 29 U.S.C. § 657(a); *see also, Barlow's*, 436 U.S. at 307; *Donovan v. Red Star Services, Inc.*, 739 F. 2d 774, 780-83 (2d Cir. 1984); *Marshall v. Seaward International, Inc.*, 510 F.Supp. 314 (W.D. Va. 1980), *aff'd.*, 644 F.2d 880 (4th Cir. 1981); *Stoddard Lumber Co. Inc. v. Marshall*, 627 F.2d 984, 989 (9th Cir. 1980).

11. The administrative probable cause standard for issuance of an OSHA inspection warrant may be met through *either* of two means, by showing either: "an administrative plan containing specific neutral criteria" that are satisfied with respect to the workplace to be inspected; or "specific evidence of a violation" at the workplace. *Int'l Matex Tank Terminals-Bayonne*, 928 F.2d at 622 (citing *Barlow's*, 436 U.S. at 320). This either/or interpretation is widely accepted. *Id.* (collecting cases from other Circuits). Furthermore, the relaxed probable cause standard applies to both bases. *Id.* at 623-624.

12. In this case, OSHA has probable cause to inspect these workplaces because the inspections are being conducted pursuant to a neutral general administrative plan for the enforcement of the Act. *See Industrial Steel Products Co. v. OSHA*, 845 F. 2d 1330, 1335-36 (5th Cir. 1988) (warrant application that described methodology used to select employer for inspection contained sufficient information to support a finding that employers were selected according to neutral criteria); *Pennsylvania Steel v. Sec. of Labor*, 831 F.2d 1211, 1215 (3d Cir. 1987). Under OSHA's Regional Emphasis Program for Construction Work Sites, the three workplaces at issue were selected for inspection by virtue of their inclusion on a list of all construction worksites in a particular selected geographic area. *See* Drogowski Decl. ¶ 7-12, 15; Ng Decl. ¶¶ 3-7. Because Royal Home denied entry on another workplace from that list that OSHA recently attempted to inspect,

OSHA seeks a pre-issuance warrant for the inspections of the three subject workplaces. *See* Drogowski Decl. ¶ 15; Huang Decl. ¶¶ 4-5.

13.     The inspections and investigations here will be conducted by one or more employees of the Occupational Safety and Health Administration designated by the Secretary of Labor, United States Department of Labor, to be his authorized representative(s), pursuant to proper and reasonable administrative standards contained in regulations duly issued by the Secretary under authorization granted in the Act and found in 29 C.F.R. Part 1903.

14.     The inspections and investigations will be conducted during regular working hours and at other reasonable times, within reasonable limits, and in a reasonable manner.  The inspections and investigations will be commenced as soon as practicable after the issuance of this warrant and will be completed with reasonable promptness, in accordance with Section 8(a) of the Act.  Upon arrival at the subject workplaces, the authorized representative(s) of the Occupational Safety and Health Administration will present his or her credentials to the employer.

15.     In conducting its inspections, the Act gives OSHA the express authority to privately interview employees at the employer's workplaces during regular business hours. *Donovan v. Wollaston Alloys, Inc.*, 695 F.2d 1, 4 n.6 and 6 (1st Cir. 1982) (wherein the employer unlawfully obstructed OSHA's inspection by refusing to permit private employee interviews on its premises); *See also*, 29 C.F.R. § 1903.7(b) ("Compliance Safety and Health Officers shall have authority to . . . question privately any . . . employee").

16.     Pursuant to Section 8(c) of the Act, 29 C.F.R. § 1903.3, and the Court's instructions, the application in this case requests, in addition to the right to conduct actual

physical inspection of the workplaces and private employee interviews, affirmation of the authority to "review records required by the Act and regulations...." *Barlow's*, 436 U.S. at 324, footnote 22. OSHA is also authorized to utilize employee sampling devices as part of reasonable inspection techniques. 29 C.F.R. § 1903.7(b) (1983); *Service Foundry Company, Inc. v. Donovan*, 721 F.2d 492 (5th Cir. 1984); *Donovan v. Enterprise Foundry, Inc.*, 751 F.2d 30 (1st Cir. 1984).

17.    After completion of the requested warrant inspections, a return will be made to the Court showing that the inspections ordered therein has been completed.


WHEREFORE, probable cause having been shown, the Secretary of Labor respectfully requests that the Court issue an inspection warrant to permit the inspections of the workplaces described in the caption above and to permit the questioning privately of any employee of the establishments, at the locations shown in the caption, under the Occupational Safety and Health Act of 1970 by representatives of the Secretary of Labor without delay.

DATED:  June 22, 2021

                                                                      Respectfully submitted,

                                                                      ELENA GOLDSTEIN
                                                                      Acting Solicitor

          JACQUELYN M. KASULIS            JEFFREY S. ROGOFF
          Acting United States Attorney          Regional Solicitor


By:    */s/ David A. Cooper*              By:    */s/ Susan Jacobs*
          DAVID A. COOPER                        SUSAN B. JACOBS
          Assistant U.S. Attorney                  Senior Trial Attorney
          United States Attorney's Office         U.S. Department of Labor
          271-A Cadman Plaza East               201 Varick Street, Room 983

Brooklyn, NY 11201
Tel. 718-254-6228
Email: david.cooper4@usdoj.gov

New York, NY 10014
Tel. 646-264-3664
jacobs.susan@dol.gov, ny-sol-ecf@dol.gov

Attorneys for MARTIN J. WALSH,
Secretary of Labor

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
IN THE MATTER OF

     ESTABLISHMENT INSPECTION OF:       File No. 21-M-726 (LB)

ROYAL HOME IMPROVEMENTS, INC.
2317 Avenue K
Brooklyn (Kings County), New York 11210

1191 E. 22nd Street
Brooklyn (Kings County), New York 11210

1485 E. 21st Street
Brooklyn (Kings County), New York 11210
-------------------------------------------------------------

## DECLARATION PURSUANT TO 28 U.S.C. § 1746

I, JANET DROGOWSKI, declare under penalty of perjury that the following is true and

correct:

1.     I am an Assistant Area Director in the Manhattan Area Office of the Occupational

Safety and Health Administration, United States Department of Labor ("OSHA"). I am fully

familiar with the facts and circumstances of this case. I submit this Declaration in support of the

Secretary of Labor's Ex-Parte Application for an Inspection Warrant in this matter.

2.     The inspections and investigations sought are part of a program designed to assure

compliance with the Occupational Safety and Health Act of 1970 ("the Act").

3.     The planning and programming for these inspections was done by following

OSHA's Field Operation Manual ("FOM"), Chapter 2 that applies, in part, to Regional Emphasis

Programs programmed inspections (Section V.E.). A copy of the relevant section is attached as

Exhibit 1. The purpose of the inspections and investigations is to learn whether violations of

federal occupational safety and health standards exist or existed at the workplaces to which employees may be exposed.

4.     This inspections and investigations are based upon reasonable legislative or administrative standards for conducting such inspections as set up by a general administrative plan (contained in Chapter 2, Section IV.B. of the FOM) setting forth the following inspection priorities: (1) imminent danger; (2) fatality/catastrophe investigations; (3) investigation of complaints/referrals (and accidents and follow-ups); and (4) programmed inspections. A copy of the relevant portion of this section is attached as Exhibit 2.

5.     Under Section IV.B. of Chapter 2 of the FOM, programmed inspections are the fourth priority for purposes of prioritizing accomplishment and assignment of manpower resources for inspection categories. *See* Ex. 2, Table 2-1.

6.     For the first three priorities, imminent danger, fatality/catastrophe investigations and complaints, inspections had already been completed, or assigned, or there were none pending, at the time these programmed inspections were assigned. Thus, under OSHA's national, neutral criteria plan, the time for assigning these programmed inspections had come.

7.     The worksites referenced in the caption were selected to be inspected in accordance with OSHA's Regional Emphasis Program – Construction Worksites – Local Targeting (Directive No. 2019-06).  A copy of the Regional Emphasis Program ("REP") is attached as Exhibit 3. The REP covers all OSHA Area Offices in Region II (New York, New Jersey and Puerto Rico). The REP is effective through September 30, 2023.

8.     The REP for Construction Worksites is a programmed inspection plan for local construction projects to secure safe and healthful working conditions and to target an industry

with one of the highest risks of injury and death. The majority of local construction inspections are prompted by employee complaints or as the result of a workplace accident. The purpose of the REP is to address the challenge of initiating random inspections of local construction projects that tend to be of short duration, conducted by small employers and employ immigrant workers who are reluctant to report hazardous conditions to OSHA. *See* Ex. 3, ¶IV. The REP was developed and approved according to OSHA's Procedures for the Approval of Local Emphasis Programs (LEPs) (CPL 04-000-002). A copy of CPL 04-000-002 is attached as Exhibit 4.

9. The REP directs each Area Director to generate a list of establishments for inspection using local knowledge such as media, unions, community groups and building departments. *See* Ex. 3, ¶VI.A. The Area Director selects a distinct geographical area within the Area Office's jurisdiction and the boundaries as defined based on the Postal Zip Code, police precinct, political district, and/or neighborhood. *Id.*

10. An OSHA Compliance Safety and Health Officer ("CSHO") is then assigned to travel throughout the selected geographic area. Any observed ongoing construction projects are listed by the CSHO according to street address, type of construction activity observed and identity of employer. If any hazards are observed, they will be noted as well. *Id.*, ¶VI.B. and ¶VI.C. Inspections conducted under the REP are comprehensive in scope. *Id.* ¶VI.G.

11. Here, the Manhattan Area Office selected a geographic area covering Ocean Parkway from Parkside Avenue to Kings Highway and Flatbush Avenue/Avenue D in Brooklyn, New York. A map showing the selected geographic area is attached as Exhibit 5. This particular area was selected because construction projects in the area had not been recently inspected by OSHA, the area contained active construction projects that tend to employ immigrant workers who are reluctant to report hazardous conditions to OSHA, and previous workplace accidents had occurred in the area.

12. On April 12, 2021, a Local Construction Targeting List was initiated by CSHOs

3

James Ng and Gordon Mei by doing a street-by-street review of the selected geographic area. The list contains a total of 191 worksites in various stages of construction. Worksites are chosen to be assigned for inspection based on the guidelines contained in OSHA's memorandum on Establishment-Targeting Lists for Emphasis Programs dated November 1, 2014. A copy of the memorandum is attached as Exhibit 6. Under that memorandum, OSHA can choose either to inspect all active worksites that are on the aforementioned Targeting List, or alternatively, to inspect a randomized sample of worksites from the Targeting List using randomization parameters set forth in the memorandum. *See* Ex. 6, p. 2. In this case, OSHA has chosen to inspect all active worksites on the Targeting List. Thus far, OSHA has addressed a majority of the worksites on the Targeting List (either by opening an inspection, or confirming inactive status of worksite).

13.     A construction worksite from the Targeting List located at 1901 Ocean Avenue was assigned to be inspected. The worksite is controlled by Royal Home Improvements, Inc. ("Royal Home"). When CSHO Zhao Hong Huang attempted to open an inspection on June 2, 2021, Royal Home refused to permit his entry, and informed him that Royal Home's company policy was to require that OSHA schedule an appointment before being allowed to inspect the worksite. OSHA was unable to inspect that worksite before construction work was all but completed at the worksite.

14.     OSHA is prohibited from giving an employer advance notice of an inspection and therefore cannot "make an appointment" as Royal Home requires. Section 17(f) of the Act provides that "[a]ny person who gives advance notice of any inspection to be conducted under this Act, without authority from the Secretary or his designees, shall, upon conviction, be punished by a fine of not more than $1,000 or by imprisonment for not more than six months, or by both."

15.     Three additional worksites included on the Local Construction Targeting List, that have not yet been inspected by OSHA, are controlled by Royal Home: (1) 2317 Avenue K; (2) 1191 E. 22nd Street; and (3) 1485 E. 21st Street in Brooklyn, New York. Based on the employer's recent history and stated policy of refusing to allow OSHA to inspect unless it first makes an appointment, my office believes that the issuance of a pre-inspection warrant for the three worksites is justified and appropriate under 29 C.F.R. § 1903.4(b).

16.     The previous OSHA inspection/citation history of Royal Home Improvements, Inc. is as follows:

a.      September 20, 2019 – Programed-planned (complete) inspection resulting in three Serious violations ($6,600 penalty); and

b.      November 22, 2019 – Programed-planned (partial) inspection resulting in one Serious violation ($3789 penalty).

17.     If any hazardous conditions are found to exist upon investigation, they may constitute violations of OSHA's construction standards, found at 29 C.F.R. Part 1926.

18.     OSHA is authorized by the Act and in 29 C.F.R. § 1903.7 issued under Section 8(a) of the Act to question privately any employer, owner, operator, agent or employee of the establishment, take photographs and samples and employ other reasonable investigative techniques.

I submit this Declaration in support of the Secretary of Labor's Application for an Inspection Warrant. I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 21st day of June 2021

JANET DROGOWSKI, Assistant Area Director
Occupational Safety & Health Administration
Manhattan OSHA Area Office
201 Varick Street, Room 908
New York, NY 10014

# Exhibit 1

# OSHA INSTRUCTION

**U.S. DEPARTMENT OF LABOR**

**Occupational Safety and Health Administration**

| DIRECTIVE NUMBER: CPL 02-00-164 | EFFECTIVE DATE: 04/14/2020 |
|---|---|
| **SUBJECT:** Field Operations Manual (FOM) | |

## ABSTRACT

**Purpose:**        To provide OSHA offices, State Plan programs and federal agencies with policy and procedures concerning the enforcement of occupational safety and health standards.  Also, this instruction provides current information and ensures that occupational safety and health standards are enforced with uniformity.

**Scope:**        OSHA-wide.

**References:**        See Chapter 1, Section III.

**Cancellations:**        This Instruction supersedes OSHA Instructions CPL 02-00-163, Field Operations Manual (FOM), issued September 13, 2019.

**State Impact:**        Notice of Intent and Equivalency required.  See Chapter 1, Section VI.

**Action Offices:**        National, Regional, and Area Offices.

**Originating Office:**        Directorate of Enforcement Programs (DEP).

**Contact:**        Director, Directorate of Enforcement Programs
U.S. Department of Labor – OSHA
200 Constitution Avenue, N.W., Room N-3119
Washington, DC  20210
202-693-1850

By and Under the Authority of

Loren Sweatt
Principal Deputy Assistant Secretary

Inspections of employers at multi-employer worksites whose operations are not directly addressed by the subject of the conditions identified in a complaint, accident, or referral are designated as unprogrammed related.

An example would be: A trenching inspection conducted at the unprogrammed worksite where the trenching hazard was not identified in the complaint, accident report, or referral.

3. Programmed.

Worksite safety and health inspections that have been scheduled based upon objective or neutral selection criteria are programmed inspections. The worksites are selected according to national scheduling plans or under local, regional, and national special emphasis programs.

4. Program Related.

Inspections of employers at multi-employer worksites whose activities were not included in the programmed assignment, such as a low injury rate employer at a worksite where programmed inspections are being conducted for all high rate employers.

V. Unprogrammed Activity – Hazard Evaluation and Inspection Scheduling.

Enforcement procedures relating to unprogrammed activity are located in subject-specific chapters of this manual:

➤ Follow-ups and Monitoring, see Chapter 7, Post-Citation Procedures and Abatement Verification.

➤ Complaint/Referral Processing, see Chapter 9, Complaint and Referral Processing.

➤ Whistleblower Complaints, see Chapter 9, Complaint and Referral Processing.

➤ Imminent Danger, see Chapter 11, Imminent Danger, Fatality, Catastrophe, and Emergency Response.

➤ Fatality/Catastrophe, see Chapter 11, Imminent Danger, Fatality, Catastrophe, and Emergency Response.

➤ Emergency Response, see Chapter 11, Imminent Danger, Fatality, Catastrophe, and Emergency Response.

VI. Programmed Inspections.

A. Scheduling for Construction Inspections.

Due to the mobility of the construction industry, the transitory nature of construction worksites and the fact that construction worksites frequently involve more than one employer, inspections are scheduled from a list of construction worksites rather than construction employers. The OSHA National Office will provide to each Area/District Office a randomly selected list of construction projects from identified or known covered active projects. This list will contain the projected number of sites that the field office has

reported that it plans to inspect during the next month. Projects are selected in accordance with the inspection schedule for construction.

NOTE: See CPL 02-00-155, *Inspection Scheduling for Construction*, September 6, 2013.

B. <u>Scheduling for Maritime Inspections</u>.

Maritime inspection activities are covered in greater detail in Chapter 10, Section III., Maritime.

1. <u>Marine Cargo Handling Industry</u>.

The marine cargo handling industry is made up of longshoring activities (i.e., cargo handling aboard vessels, 29 C.F.R. Part 1918) and activities within marine terminals (i.e., cargo handling ashore; 29 C.F.R. 1917). Because these activities are different, several scheduling methods are necessary. Consequently, marine cargo handling industry inspections can be scheduled as National Emphasis Programs (NEPs), Regional Emphasis Programs (REPs), Local Emphasis Programs (LEPs), or from lists developed in accordance with CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995.
NOTE: See CPL 02-00-154, *Longshoring and Marine Terminals "Tool Shed" Directive*, July 31, 2012, for more information.

2. <u>Shipbreaking</u>.

CPL-03-00-020, *OSHA's National Emphasis Program (NEP) on Shipbreaking,* March 7, 2016, describes policies and procedures to reduce or eliminate workplace hazards associated with shipbreaking operations. Also, OSHA has entered into a *Memorandum of Understanding on Coordination and Information Sharing of Domestic Ship Recycling Operations between DOD/DOT/EPA/DOL-OSHA,* July 30, 2015.

3. <u>Shipyard Employment</u>.

The shipyard employment industry is made up of several industrial activities. Because these activities are different, several scheduling methods are necessary. Consequently, shipyard employment inspections can be scheduled under NEPs, REPs, LEPs, or from lists developed in accordance with CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995, and CPL 02-01-060, *Enforcement Guidance for Personal Protective Equipment (PPE) in Shipyard Employment*, May 22, 2019.
NOTE: See CPL 02-00-162, *Shipyard Employment "Tool Bag" Directive*, May 22, 2019, for more information.

C. <u>Special Emphasis Programs (SEPs)</u>.

Special Emphasis Programs provide for programmed inspections of establishments in industries with potentially high injury or illness rates that are not covered by other programmed inspection scheduling systems or, if covered, where the potentially high injury or illness rates are not addressed to the extent considered adequate under the specific circumstances. SEPs are also based on potential exposure to health hazards. Special emphasis programs can also be used to develop and implement alternative scheduling

procedures or other departures from national procedures. Special emphasis programs can include National Emphasis Programs, Regional Emphasis Programs, and Local Emphasis Programs.

1. <u>Identification of Special Emphasis Programs</u>.

   The description of the particular Special Emphasis Program shall be identified by one or more of the following:

   a. Specific industry;

   b. Trade/craft;

   c. Substance or other hazard;

   d. Type of workplace operation;

   e. Type/kind of equipment; and

   f. Other identifying characteristics.

2. <u>Special Emphasis Program Scope</u>.

   The reasons for and the scope of a Special Emphasis Program shall be described; and may be limited by geographic boundaries, size of worksite, or similar considerations.

3. <u>Pilot Programs</u>.

   National or local pilot programs can also be established under Special Emphasis Programs. Such programs can be conducted for the purpose of assessing the actual extent of suspected or potential hazards, determining the feasibility of new or experimental compliance procedures, or for any other legitimate reason.

D. <u>National Emphasis Programs (NEPs)</u>.

   OSHA develops National Emphasis Programs to focus outreach efforts and inspections on specific hazards in a workplace. NEPs may include targeting of employers with 10 or fewer employees, as long as they do not conflict with restrictions under congressional Appropriations Act riders described in OSHA Instruction CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, or any successor guidance. All NEPs should advance the Department of Labor's strategic goal of ensuring safe and healthy workplaces and align with Agency goals. NEPs can be developed to support OSHA's annual Operating Plan, but can also be developed in response to an emerging hazard.

   In general, each NEP should include the same elements and considerations as listed in OSHA's CPL 04-00-002. *Procedures for the Approval of Local Emphasis Programs (LEPs)*, November 13, 2018. Additionally, an assessment shall be conducted to determine whether State Plan adoption should be mandatory. This assessment shall take into account the applicability of the program within each state's area of coverage. DEP/DOC shall consult with DCSP in making that determination.

E. <u>Local Emphasis Programs (LEPs) and Regional Emphasis Programs (REPs)</u>.

LEPs and REPs are types of special emphasis programs in which one or more Area Offices of a Region participate. LEPs and REPs are generally based on knowledge of local industry hazards or local industry injury/illness experience. LEPs and REPs must be developed and approved when one or more Area Offices within a Region target inspections to a specific industry(s), hazard(s), or other workplace characteristic(s) - e.g., as part of, or in conjunction with, a local initiative or problem-solving project. A list of LEPs is on the OSHA website under the Enforcement tab.

NOTE: See CPL 04-00-002, *Procedures for Approval of Local Emphasis Programs (LEPs)*, November 13, 2018.

OSHA directives include topic-specific scheduling procedures in addition to the general information provided in this section.

F. <u>Site-Specific Targeting (SST) Inspection Programs</u>.

The SST inspection program is OSHA's main site-specific programmed inspection initiative for non-construction workplaces that have 20 or more employees. The SST program uses data received from injury and illness information that employers submitted under 1904.41.

G. <u>Other Special Programs</u>.

The Agency may develop programs to cover special categories of inspections that are not covered under a Special Emphasis Program.

H. <u>Inspection Scheduling and Interface with Cooperative Program Participants</u>.

Employers who participate in voluntary compliance programs can be exempt from programmed inspections and eligible for inspection deferrals or other enforcement incentives. The Area Director or designee will determine whether the employer is actively participating in a Cooperative Program that would impact inspection and enforcement activity at the worksite being considered for inspection. Where possible, this determination should be made prior to scheduling the inspection.

Information regarding a facility's participation in the following programs should be available prior to scheduling inspection activity:

> ➢ VPP Program;
> ➢ Pre-SHARP and SHARP Participants;
> ➢ Consultation and 90-Day Deferrals.

1. <u>Voluntary Protection Program</u>.

a. <u>Regional VPP Manager Responsibilities</u>.

The Regional VPP managers must keep Area Directors or their designees informed about VPP applicants and the status of participants in VPP. This will prevent unnecessary scheduling of programmed inspections at VPP sites and ensure efficient use of resources. Area Directors or their designee should be informed:

> ➢ That the site can be removed from the programmed inspection list. Such removal can occur no more than 75 days prior to the on-site evaluation;

# Exhibit 2

IV.   Enforcement Program Scheduling.

    A.   General.

       1.  OSHA's priority system for conducting inspections is designed to allocate available OSHA resources as effectively as possible to ensure that maximum feasible protection is provided to working men and women. The Area Director or designee will ensure that inspections are scheduled within the framework of this chapter, that they are consistent with the objectives of the agency, and that appropriate documentation of scheduling practices is maintained.

       2.  The Area Director or designee will also ensure that OSHA resources are effectively distributed during inspection activities. If an inspection is of a complex nature, the Area Director or designee may consider utilizing additional OSHA resources (e.g., the Health Response Team). In other circumstances, the use of outside resources may aid the Area or District Office to deploy available resources more effectively. The Area Office will retain control of the inspection.

    B.   Inspection Priority Criteria.

    Generally, priority of accomplishment and of assigning staff resources for inspection categories is as shown in Table 2-1:

**Table 2-1:  Inspection Priorities**

| Priority | Category |
|---|---|
| First | Imminent Danger |
| Second | Fatality/Catastrophe (NOTE) |
| Third | Complaints/Referrals |
| Fourth | Programmed Inspections |

NOTE:  OSHA Area Offices will determine the inspection priority of a **catastrophe** using the Memorandum entitled, "*Revised Interim Enforcement Procedures for Reporting Requirements under 29 C.F.R. 1904.39*," dated March 04, 2016, or unless superseded by future agency-approved correspondence.

       1.  Efficient Use of Resources.

          Deviations from this priority list are allowed so long as they are justifiable, lead to the efficient use of resources, and promote effective worker protection. An example of such a deviation would be when the Agency, Regional Administrator or an Area Director commits a certain percentage of resources to programmed Special Emphasis Program (SEP) inspections such as a National Emphasis Program (NEP), a Regional Emphasis Program (REP), or Local Emphasis Program (LEP). Inspection scheduling deviations must be documented in the case file.

# Exhibit 3



# OSHA REGIONAL INSTRUCTION

**U.S. DEPARTMENT OF LABOR**

**Occupational Safety and Health Administration**

| | |
|---|---|
| **DIRECTIVE NUMBER:** 2019-06 | **EFFECTIVE DATE:** 10/1/2018 |
| **SUBJECT:** Regional Emphasis Program – Construction Work Sites – Local Targeting | |
| **REGIONAL IDENTIFIER:** Region 2 | |

## ABSTRACT

**Purpose:** This regional instruction continues the implementation of a Regional Emphasis Program (REP) for programmed safety and health inspections of local construction projects.

**References:** CPL 02-00-160, Field Operations Manual (FOM), 8/2/2016; CPL 04-00-002, Procedures for Approval of Local Emphasis Programs (LEPs), 11/13/2018; CPL 02-00-0025, Scheduling System for Programmed Inspections, 01/04/1995; CPL 02-00-051, Enforcement Exemptions and Limitations under the Appropriations Act, 5/28/1998.

**Cancellations:** This instruction cancels Regional Emphasis Program – Construction Worksites – Local Targeting Region II, 2018-06 (CPL 2).

**Expiration:** This instruction expires September 30, 2023.
EXCEPTION: Any inspection begun prior to September 30, 2023 may continue until its conclusion.

**State Impact:** None

**Action Offices:** All Region II Area Offices

**Originating Office:** Office of Regional Administrator

**Contact:** Office of Regional Administrator
201 Varick Street, Room 670, New York, NY 10014

By and Under the Authority of

For Robert D. Kulick

Regional Administrator

I.    Purpose**.**

      This regional instruction continues the implementation of a Regional Emphasis Program (REP) for programmed safety and health inspections of local construction projects. The REP will be conducted in accordance with the Field Operations Manual (FOM), CPL 02-00-160, dated August 2, 2016.

II.   Scope. This instruction applies to all Region II Area Offices.

III.  Expiration. This instruction expires on September 30, 2023.

      EXCEPTION: Any inspection begun prior to September 30, 2023 may continue until its conclusion.

IV.   Background.

      Successful construction inspection targeting has always been challenging. Urban and suburban environments add their unique set of confounders to these challenges. Currently, construction safety and health inspections conducted by each respective Area Office are based primarily on the following triggers:
      ·     Fall REP (Regional)
      ·     Heavy Highway and Bridge (Regional)
      ·     Gut-rehab REP (Regional)
      ·     Unprogrammed activity, such as CSHO self-referrals, complaints, and accidents

      Additionally, each Area Office conducts a small amount of programmed inspections based on lists provided by the Construction Inspection Targeting System (c-targeting).

      Except for the relatively few programmed inspections, the major triggers for inspection rely on some hazardous condition to occur and either be observed by OSHA (Fall REP, Gut-rehab REP, self-referrals), be reported to OSHA (referrals and complaints), or else for an accident to occur and be reported to OSHA. The only truly random preventative inspections (i.e., those supplied by the Construction Inspection Targeting System) suffer from certain institutional drawbacks. These include reliance on bids, permits, and other filings to initiate tracking. Unfortunately, many of the construction projects within our office's jurisdiction do not appear on the Construction Inspection Targeting System lists. These are primarily smaller projects, often without permits, and usually conducted by small employers. Many of these projects are of a short duration. These projects also tend to employ many immigrant workers, who are traditionally reluctant to file formal complaints. All of these factors are associated with a higher risk of construction injuries and fatalities and hamper traditional targeting methods.

      The Bureau of Labor Statistics reports for NAICS Code 23, establishments primarily engaged in the construction of buildings or engineering projects, in 2017 there was 971

fatalities and for 2017 a total recordable injury and illness case rate of 3.1 per 100 full time workers. In the area of jurisdiction covered by Region II, for FY 2018, there were 36 work related fatalities in the construction industry.

This emphasis program supports the DOL objective to secure safe and healthful working conditions for America's workers by implementing the OSHA Strategic Plan objective to target the most hazardous worksites for inspection by making efforts to prioritize its limited resources for inspections, compliance assistance and outreach efforts on specific industries that routinely experience injury, illness, or fatalities above the national average.

V.    <u>Action</u>. The Area Director shall ensure that the procedures outlined in the instruction are followed during the effective period of this instruction. This instruction is not to conflict with the inspection priorities as established in the Field Operations Manual (FOM). When an inspection is not conducted because the employer has refused entry, a warrant shall be sought in accordance with the current procedures for handling such refusals.

VI.   <u>Procedures</u>.

A.    The Area Director shall be responsible for developing a list of establishments for inspections. The establishment list will be generated as follows. Based on local knowledge obtained from sources such as media, unions, community groups, building departments, etc., the Area Director will select a distinct geographic area within each respective Area Offices jurisdiction. The boundaries of the area will be defined based on the Postal ZIP code, police precinct, political district or neighborhood, or significant geographic features (e.g., bodies of water, main thoroughfares, etc.).

B.    An OSHA employee will be assigned to travel throughout the selected geographic area. All ongoing construction projects observed will be listed by the OSHA staffer. This includes both active and inactive projects, whether or not hazards are observed. Cues for ongoing projects include actual construction work, scaffolding, sidewalk sheds, construction barricades and fencing, posted building permits, demolition dumpsters, and the presence cranes and heavy equipment. If possible, the entire selected geographic area will be surveyed the same business day.

C.    The OSHA staffer will list each observed ongoing project according to street address, type of construction activity, and any other cues observed. If possible, the identity of the employer will also be listed. If hazards are observed, they shall be noted as well. The establishments will be listed sequentially in the order in which they are observed.

D.    If hazards were observed by the OSHA staffer, they shall be reported to the AAD-Safety. If imminent danger conditions are observed, an inspection shall be initiated following appropriate protocols as described in the current Field

Operations Manual.

E.   When performing programmed inspections under this REP, each Area Office shall develop an inspection master list of establishments. The National Office Policy on List Generation and Randomization shall be followed in accordance with the national Office memorandum to Regional Administrators dated November 12, 2014, *Establishment Targeting Lists for Emphasis Programs.* Deletions and scheduling must be completed in accordance with CPL 02-00-155, *Inspection Scheduling for construction.*

F.   If the Area Director determines that the list is no longer representative of the status of work in the defined area, or that sufficient inspection resources have been devoted to the selected geographic area, a new field survey shall be conducted using the same criteria defined above, and a new list will be generated. This new survey may be of the same geographic area or of any new one.

G.   The scope of these inspections shall include both safety and health hazards, as well as a review of all applicable documentation and programs. Attention will be paid to hazards covered by OSHA's Strategic Management Plan and applicable emphasis programs. If hazards are observed in the opposite discipline (safety or health), a referral shall be made.

H.   The Area Director will explore the feasibility of using the Construction Inspection Targeting System capabilities to enhance this Local Construction Targeting REP. This includes using key-word searches throughout their databases, or selecting geographic areas based on the volume and type of construction.

I.   Establishments for inspection may fall within the scope of the current Appropriations Act. If so, inspection activities must be done and completed in accordance with the directive, CPL02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act.*

VII.  <u>Recording in OIS</u>**.** Current instructions for completing the appropriate inspection classification boxes on the OSHA Inspection form, as found in the OIS manual shall be applied when recording inspections conducted under the REP, as follows:

A.   The OSHA Inspection form for any programmed inspection covered under this Regional Emphasis Program for Local Construction Targeting shall be marked "Program Planned" in the Initiating Type field and the value "LOCALTARG" shall be recorded in the Regional Emphasis Program field.

B.   <u>REP Combined with Unprogrammed Inspections</u>. For all unprogrammed inspections conducted in conjunction with this REP inspection under this initiative, the OSHA Inspection form must be marked with the appropriate unprogrammed activity in the Initiating Type field. The value "LOCALTARG" shall be recorded in the Regional Emphasis Program field.

C. <u>REP Combined with other Emphasis Program Inspections</u>. For all programmed inspections such as other NEPs/REP/LEPs conducted in conjunction with an REP inspection under this initiative, the OSHA Inspection form must be marked as "Program Planned" in the initiating Type field. In addition, the value "LOCALTARG" shall be recorded in the Regional Emphasis Program field along with all NEP and LEP OIS codes applicable to the inspection.

VIII. <u>Outreach</u>

During the course of this renewal LEP the Area Director will continue to ensure that the ongoing outreach program will remain in effect during the enforcement phase of the program. Outreach activities will continue to be directed to reach as many stake holders in the Area Office's jurisdiction as is practicable. Stakeholders which include groups such as professional organizations, the ASSP, AIHA, Unions, and Chambers of Commerce, will be notified of the existence, purpose and objectives of this emphasis program. The outreach will also promote employer knowledge and employee awareness of the hazards and acceptable methods of abatement to prevent illness and injuries. The method of outreach is at the Area Director's discretion and can consist of one or more of the following components:

1. Broadcast mail-outs or program information.
2. Stakeholder meetings.
3. Targeted training sessions.
4. Presentations to the affected group(s).
5. Media press release or e-blast

IX. <u>Evaluation</u>.

A. Abatement documentation/verification will be submitted to or otherwise collected by the Area Office for all violations. The abatement information must be included in the case file in a timely manner.

B. The RA will ensure that each Region II area office participating in the REP/LEP will prepare and submit to EP a program report. The program report is to be conducted at the midpoint and completion of each REP/LEP. At the RA's discretion, additional reports may be required, based on the length, complexity, and coverage of the program. The midpoint assessment will take place no later than the end of the fiscal year following the calendar midpoint between the program effective and expiration dates (e.g., 2 ½ years into a 5 year program). The midpoint assessment will allow for revisions to the LEP where necessary, along with an assessment of whether continuation of the LEP is appropriate.

1. The program report will, at a minimum, address whether the LEP advances OSHA's goals and initiatives. The program report will address, as appropriate, both quantitative and qualitative measures. Types of measures that may be considered include:

a. The number of employees and/or establishments impacted by outreach activities;

b. Number of hazards abated;

c. The number of workers removed from hazards;

d. Impact on illness and injury rates (note: due to lag in available BLS data, this measure may not be suited for shorter termed programs);

e. Reductions in the number of complaints or severe injury reports within affected industries, and;

f. Any indices that relate directly to measures included in the DOL Strategic Plan, the OSHA Operating Plan, and/or additional goals of the LEP.

# Exhibit 4



# OSHA INSTRUCTION

**U.S. DEPARTMENT OF LABOR**     Occupational Safety and Health Administration

| DIRECTIVE NUMBER: CPL 04-00-002 | EFFECTIVE DATE: 11/13/2018 |
|---|---|

**SUBJECT:**     Procedures for the Approval of Local Emphasis Programs (LEPs)

## ABSTRACT

**Purpose:**     This Instruction establishes policy and procedures for the approval of Local Emphasis Programs. For the purpose of this Instruction, these procedures also apply to the approval of Regional Emphasis Programs (REPs).

**Scope:**     This instruction applies OSHA-wide.

**References:**     OSHA Instruction CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995; OSHA Instruction CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998, or successor guidance; OSHA Instruction ADM 03-00-002, *OSHA Policy Issuances*, December 11, 2000; OSHA Instruction ADM 03-00-003, *OSHA Directives System*, December 11, 2000; OSHA Instruction CPL 02-00-160, *Field Operations Manual (FOM)*, August 2, 2016, and *Memorandum on Procedures for Local and Regional Emphasis Programs*, December 3, 2014.

**Cancellations:**     This instruction cancels OSHA Instruction CPL 04-00-001, November 10, 1999.

**State Impact:**     This instruction describes a Federal Program Change for which State adoption is not required.

**Action Offices:**     National, Regional, and Area Offices.

**Originating Office:**     Directorate of Enforcement Programs (DEP).

**Contact:**  Director, Office of General Industry and Agricultural Enforcement
U.S. Department of Labor – OSHA
200 Constitution Avenue, N.W., Room N-3119
Washington, DC  20210
202-693-1850

By and Under the Authority of


LOREN SWEATT
Acting Assistant Secretary

**Executive Summary**

This instruction provides updated information and guidance to the Occupational Safety and Health Administration (OSHA) national, regional, and area offices concerning OSHA's policy and procedures for the approval of Local Emphasis Programs (LEPs) and Regional Emphasis Programs (REPs).

**Significant Changes**

- Originating offices must demonstrate that a strategic hazard assessment was conducted (Section VIII.A.1).
- An outreach period of at least 90 days must be conducted prior to beginning enforcement (Section VIII.A.2.c).
- LEPs may now extend up to five years (Section VIII.B.3).
- A program report must be completed for each LEP (Section VIII.E).
- The approval process for new LEPs has been updated to include congressional review and the role of the LEP Review Team (Section VIII.D. and Appendix B).

# Table of Contents

I. Purpose…………..………………………………………….………….……....1

II. Scope...…………………………………………………………….…….……1

III. References………..………………………………………………....…..….1

IV. Cancellations………....…………………………………………..…..….1

V. Action Offices……………..………………………………………….…..1

VI. Federal Program Change……………………………………………………2

VII. Definition……....…………...……………………………….…….……….2

VIII. Approval Procedures for New LEPs………………………………………3
   A. Area/District Office………………………………………………………3
   B. Regional Office……………………………….......……................…4
   C. National Office Units………………………………………………...5
   D. LEP Review Team………………………………………………………6
   E. Program Reports………..……………………………………………6

IX. Renewal of Existing LEPs…………………………….…………………7


Appendix A: Internal Review Sheet for Processing LEPs…………………………A-1

Appendix B: LEP Review Team Process……………...…………………...…………B-1

i

I. **Purpose**.

This instruction amends and updates the procedures for the development, approval, and implementation of Local Emphasis Programs (LEPs) and Regional Emphasis Programs (REPs).

II. **Scope**.

This instruction applies OSHA-wide.

III. **References**.

A. OSHA Instruction CPL 02-00-025, *Scheduling System for Programmed Inspections*, January 4, 1995.

B. OSHA Instruction CPL 02-00-051, *Enforcement Exemptions and Limitations under the Appropriations Act*, May 28, 1998.

C. OSHA Instruction ADM 03-00-002, *OSHA Policy Issuances*, December 11, 2000.

D. OSHA Instruction ADM 03-00-003, *OSHA Directives System*, December 11, 2000.

E. OSHA Instruction CPL 02-00-160, *Field Operations Manual* (FOM), August 2, 2016.

F. Memorandum dated December 3, 2014, on Procedures for Local and Regional Emphasis Programs.

G. Memorandum dated November 12, 2014, on Establishment-Targeting Lists for Emphasis Programs.

IV. **Cancellations**.

This instruction cancels OSHA Instruction CPL 04-00-001, November 10, 1999.

V. **Action Offices**.

A. Responsible Offices. Directorate of Enforcement Programs (DEP) and Directorate of Construction (DOC).

B. Action Offices. National, Regional, and Area Offices. OSHA Regional Administrators (RAs), Area Directors and National Office Directors will ensure

that the guidelines and procedures for approval of LEPs set forth in this
instruction are followed.

C.     Information Offices.  State Plan States, Directorate of Training and Education,
       Consultation Project Managers, Voluntary Protection Programs Managers and
       Coordinators, Compliance Assistance Coordinators, and Compliance Assistance
       Specialists.

## VI.     **Federal Program Change.**

This instruction describes a Federal program change for which State Plan adoption is not
required.  State Plans are asked to keep their respective Regional Administrator (RA)
informed of State-developed LEPs, experimental programs, local problem solving
projects, including any that relate to State Plan Strategic goals; and to coordinate with
their RA to request assignment of the appropriate OSHA Information System (OIS)
identifier code.

## VII.    **Definition.**

LEPs provide for programmed inspections of establishments in industries with potentially
high injury or illness rates which are not covered by current OSHA inspection scheduling
systems or, have hazards that are not addressed adequately under existing targeting
programs.

One or more Area Offices in a Region may participate in an LEP.  If an LEP is developed
by the Regional Office and available for participation by all offices within a Region, it
should be identified as a Regional Emphasis Program (REP).  In many cases, it may be
more expedient to develop an REP available for any Area Office, rather than developing
two or more LEPs.

LEPs are generally based on knowledge of local industry hazards or knowledge of local
injury/illness experience (enforcement data).  Whenever one or more Area Offices in a
Region focuses inspections on one or more specific industries, hazards, or other
workplace characteristics (e.g., as part of or in conjunction with a local initiative or
problem-solving project), an LEP must be developed and approved.  LEPs may be
initiated at the Area Office/District Office level or by the Regional Office.

LEPs may include targeting of employers with 10 or fewer employees, as long as they do
not conflict with restrictions under Congressional Appropriations Act riders described in
OSHA Instruction CPL 02-00-051, *Enforcement Exemptions and Limitations under the
Appropriations Act*, or any successor guidance.  All LEPs advance the Department of
Labor's strategic goal of promoting safe jobs and fair workplaces and align with Agency
goals.

**VIII.** **Approval Procedures for new LEPs.**

RAs are authorized to approve LEPs, with the concurrence of the Regional Solicitor of Labor (RSOL), OSHA's Office of the Assistant Secretary, and shall be subject to a 10 day Congressional review. The following procedures will apply:

A.  Area/District Office.  For LEPs developed for a limited number of offices within a Region; i.e., some but not all of the offices in a Region, Area Directors will submit LEP requests to the RA after completing the following:

   1.  Conduct a Strategic Hazard Assessment.  Demonstrate that a strategic review of targeted hazards was conducted and document the methodology used for the assessment.  Documentation should show a clear rationale and include the data used to conduct the assessment and the potential hazards for the selected industries.

   2.  Develop a Regional Notice for the LEP (if effective for one year) or a Regional Instruction (if effective between two to five years).  The directive must conform to the guidelines for directives in OSHA Instruction ADM 03-00-002, *OSHA Policy Issuances* and ADM 03-00-003, *OSHA Directives System*.  The Regional Notice or Instruction must contain:

      a.  Appropriate documentation and rationales for initiating the LEP and how it supports OSHA's Strategic Plan, including but not limited to the use of data to define the hazard(s) to be addressed. The Bureau of Labor Statistics (BLS) should be included in any evaluation.  Other sources of information include OSHA enforcement data, the National Institute for Occupational Safety and Health (NIOSH), Environmental Protection Agency (EPA), County Business Patterns (CBP), State public health agencies, Poison Control Centers, State workers' compensation agencies, and any other public sector database.

      b.  A list of establishments or a method of generating a list of worksites, and a process for  establishing objective and neutral criteria to select establishments for inspection.  An acceptable method for generation and randomization of inspection targeting lists can be found in the memorandum "Establishment-Targeting Lists for Emphasis Programs," November 12, 2014.

c.      Criteria for robust and comprehensive outreach activities and the process for conducting those activities for at least 90 days prior to initiating inspections.  Outreach activities include, but are not limited to: outreach to identified industries, workers and other stakeholders; use of existing OSHA resources and outreach tools; and leveraging of community knowledge and local institutions as defined by the memorandum on "Procedures for Local and Regional Emphasis Programs" (December 3, 2014).  Letters and other outreach materials may be in hard copy or electronic format, and may be disseminated through press releases, social media, or other outlets consistent with current media policy.

d.      A program report component for determining the relative success/impact of the LEP.  See Section IX.E for program reports.

3.      If an LEP targets employers with 10 or fewer employees, then the directive must contain a statement explaining why their inclusion is appropriate and consistent with OSHA Instruction CPL 02-00-051.

B.      <u>Regional Office</u>.  Once the appropriate approvals are obtained and notifications provided (union, congressional), RAs are authorized to approve LEPs.  The RA must ensure that the LEP meets the criteria outlined above at A.1 through A.3.

The RA shall ensure that:

1.      The RSOL has provided concurrence with regard to the legal sufficiency of the proposed inspection program and procedures, including, but not limited to, neutral administrative plan criteria for selecting establishments for the inspection.  The RSOL may address additional issues based on local experience in obtaining and enforcing compulsory process.  (See Additional Program Components in Appendix A of this instruction).

2.      The LEP is assigned an OIS identifier code.  Regional Offices have the ability to create their own codes in OIS.  If assistance is needed in creating the codes the Directorate of Administrative Programs/OIS Team can be contacted for assistance.  The request will be initiated through the OIS Helpdesk.  The assigned code must be included in the LEP directive and shall be used to code each LEP inspection.

3.      The LEP effective period is specified in the directive and will not exceed five years.  LEPs may be renewed at the end of the defined effective period (using a Regional Notice or Regional Instruction), subject to the findings and recommendations of the LEP reports.  LEPs may be terminated prior to the end of their effective dates (using a Regional

Notice), subject to the findings and recommendations of associated reports and/or additional relevant facts and circumstances as determined by the RA. LEPs expiring at the end of their effective dates do not require any actions other than to request OSHA's WebAdmin to archive the posted LEP.

4. An electronic copy of all LEPs shall be provided to DEP for review, and, if it applies to the construction industry, to DOC, prior to signature. When submitting the electronic copy to DEP and to DOC, the LEP may be emailed as an attachment to the "zzOSHA-LEP" email group. Electronic submissions should include answers to the questions in Appendix A.

5. After addressing issues identified by DEP or DOC, the LEP is signed by the RA, and then a web-ready electronic copy shall be forwarded to the Office of Management Systems and Organization (OMSO) for posting to the OSHA Directives System.

6. No LEP/REP inspection will be conducted until the applicable directive is posted on OSHA's public webpage.

C.  <u>National Office Units.</u>

1. DEP and DOC shall:

   a.  Provide overall direction and guidance in establishing Agency procedures for LEPs.

   b.  Track all LEPs submitted.

   c.  Share all new LEPs with the LEP Review Team (see Appendix B) for processing.

   d.  Forward new LEP directives to the Office of the Assistant Secretary for review, Congressional notification, and final approval.

   e.  Provide approval to Regional offices of LEPs submitted prior to signature by the RAs.

   f.  Provide technical assistance and advice to field offices in preparing LEP report criteria.

> g. Review LEP reports submitted by the RAs and identify possible national applications of LEPs.

2. The Directorate of Administrative Programs (DAP) shall:

> a. Through the Office of Information Technology Solutions (OITS), provide guidance if needed on how to create LEP codes to RAs.

> b. Through OMSO, submit approved LEPs for posting on OSHA's public Directives page.

> c. Through OITS/OSHA WebAdmin, post approved LEPs forwarded by OMSO.

D. <u>LEP Review Team</u>. A field group consisting of five Deputy RAs and Assistant Regional Administrators (ARAs) for Enforcement, will conduct a peer review of all new proposed LEPs and provide feedback to the originating region. Team members will serve for one year, with replacement members being introduced on a rotating basis. Deputy RA members will rotate serving as short term leads for the group, and DEP will serve in an advisory supporting role.

See Appendix B for a description of the LEP Review Team process.

E. <u>Program Reports</u>. The RA must ensure that a program report is conducted at the midpoint and completion of each LEP. At the RA's discretion, additional reports may be required, based on the length, complexity, and coverage of the program. The midpoint assessment should take place no later than the end of the fiscal year following the calendar midpoint between the program effective and expiration dates (e.g., 2 ½ years into a 5 year program). The midpoint assessment will allow for revisions to the LEP where necessary, along with an assessment of whether continuation of the LEP is appropriate.

1. The program report must, at a minimum, address whether the LEP advances OSHA's goals and initiatives. Ideally, the program report should address both quantitative and qualitative measures. Types of measures that may be considered include:

> a. The number of employees and/or establishments impacted by outreach activities;

> b. Number of hazards abated;

> c. The number of workers removed from hazards;

        d.        Impact on illness and injury rates (note:  due to lag in available BLS data, this measure may not be suited for shorter termed programs);

        e.        Reductions in the number of complaints or severe injury reports within affected industries, and;

        f.        Any indices that relate directly to measures included in the DOL Strategic Plan, the OSHA Operating Plan, and/or additional goals of the LEP.

    2.    The RA will ensure that the Region:

        a.        Manages the LEPs using OIS data and other information to develop the program, and determine if continuation of the LEP is appropriate; and

        b.        Addresses all questions outlined in Appendix A as part of each initial LEP review and approval.

## IX.    <u>Renewal of Existing LEPs.</u>

    A.    If an Area or Regional Office decides to renew an existing LEP or REP, the RA shall ensure that the following updates have been made:

        1.    Text within document has been changed from "implementing" to "continues" or "renews" to clarify that the LEP is a renewal and not a new program.

        2.    References to documents, such as the FOM, are updated, including new CPL number, internet links (if provided), and publication date.

        3.    The Instruction follows the correct format, such as the inclusion of cancellations in the Abstract, and use of correct masthead.

        4.    The data used to analyze risk is the most recent available through BLS (or appropriate source).

    B.    Upon renewal, the LEP shall be updated on OSHA's public *Directives* webpage (See Section VIII.B.5).

# Appendix A
## Internal Review Sheet for Processing Local Emphasis Programs (LEPs)

*This form may be used to ensure that LEPs follow the requirements of this Instruction and address all key program areas.*

| | |
|---|---|
| **Directive Number:** | **Effective Date:** |
| **Regional Identifier:** | **Expiration Date:** |
| **OIS Identifier/Coding:** | **Action Offices:** |

| |
|---|
| **Subject:** |

| |
|---|
| **Regional Contact:** |

| **Strategic Hazard Assessment** |
|---|

- Does the LEP support OSHA's Strategic Plan and annual performance goals?
- Is there a clear purpose (e.g., eliminate dangerous processes, exposure to safety and health hazards, injuries/illnesses, or fatalities)?
- Is the underlying data included and does it support the initiative (e.g., BLS Data, NIOSH, EPA, County Business Patterns (CBP), OSHA enforcement/anecdotal data, State public health agencies; State workers compensation agencies, etc.)?

| **Establishment Selection** |
|---|

- Does the LEP adhere to proper generation and randomization of inspection targeting list?
- Is there a list of establishments generated based on administratively neutral criteria that selects establishments for inspection in compliance with the memorandum dated November 12, 2014, on "Establishment-Targeting Lists for Emphasis Programs." (See also Appendix C of OSHA Instruction CPL 02-00-025, Scheduling System for Programmed Inspections.)
- Does the LEP comply with CPL 02-00-051, Exemptions and Limitations Under the Current Appropriations Act?

| Outreach |
|---|
| • Is there a process for conducting robust and comprehensive outreach activities for at least three months prior to initiating inspections?<br>• Do the outreach activities effectively target the appropriate industry (ies)? |

| Program Reports |
|---|
| • Is there a component for determining the program's relative success?<br>• Is there a defined mechanism for assessing progress at the midpoint and at the completion of the program? |

| Additional Program Components |
|---|
| • Did the RA receive RSOL concurrence with regard to the legal sufficiency of the proposed inspection program and procedures?<br>• Does the LEP have a well-defined effective period not exceeding 5 years?<br>• Are the LEP Notice references complete and accurate? |

| Additional Comments/Recommendations |
|---|
| |

# Appendix B
## The LEP Review Team Process

A field group of five members, consisting of Deputy RAs and ARAs for Enforcement, will conduct a peer review of all new proposed LEPs and provide feedback to the originating region. Team members will serve for one year, with replacement members being introduced on a rotating basis. Deputy RA members will rotate as short term leads for the group. DEP will serve in an advisory role to in support the team.

Meetings should be held as needed to conduct reviews of new LEPs, but should not be scheduled any later than 21 days after the submittal of an LEP for consideration.

DEP's role will include:

- Tracking the status of LEPs and reporting periodically to the regions.
- Developing template language to facilitate quicker drafting and review of LEPs and NEPs.
- Along with DOC, providing tools on the intranet pages to assist field staff in developing, implementing, and evaluating LEPs.

**Processing LEPs**

1. Regions will share proposed LEPs with DEP/DOC. DEP will track the incoming proposals.

2. The DEP Liaison will post the proposed LEP on the LEP Group's SharePoint site and an automated notice will be sent to the group.

3. Members of the group will rotate as the lead for an individual LEP. The lead is responsible for scheduling meetings related to that LEP, communicating concerns/questions to the originating Region, and notifying the DEP Liaison when an LEP is in final draft.

4. Review Team members will review the proposed LEP to determine conformance with the current Directive on LEPs, then meet to discuss their comments and resolve outstanding issues. Review Team members should also address any issues that may have an impact on other program areas, or conflict with other OSHA policies. When reviewing the LEP, members should post their comments/edits within the shared document on SharePoint.

5. Within 5 days of meeting, the LEP lead will share final comments with the originating Region. Unless otherwise requested, the contact listed in the LEP abstract will be used as the POC for the Review Team. Upon receipt of those comments, the Region will update the LEP accordingly and resubmit the proposal to the LEP lead.

6. The Review Team will conduct a final review, then notify the DEP Liaison when the LEP

is ready to put in clearance for congressional review.

In the event that the Region disagrees with the Review Team and they are not able to resolve all issues, the Review Team and/or RA should consult with the Director of DEP for next steps.

7. Upon notification from the Review Team, DEP will prepare the document for clearance (through CCU to the OAS) and track completion.

8. The OAS shall be responsible for sharing the document with DOL's Office of Congressional and Intergovernmental Affairs (OCIA).

9. DEP will notify the Region and the LEP Review Team once the proposed LEP has completed clearance and the Congressional review period has passed.

10. The Region will sign the LEP and then submit a web-ready electronic copy to the DAP/Office of Management Systems and Organization (OMSO) for posting to the OSHA Directives System.

11. OMSO will post the LEP to OSHA's public website at https://www.osha.gov/enforcement/directives/lep.

# Exhibit 5



# Exhibit 6

Enforcement Memos  /  Establishment-Targeting Lists for Emphasis Programs

November 12, 2014

**MEMORANDUM FOR:**
REGIONAL ADMINISTRATORS

**THROUGH:**
DOROTHY DOUGHERTY
Deputy Assistant Secretary

**FROM:**
FRANCES YEBESI
Acting Director, Directorate of Evaluation and Analysis

**SUBJECT:**
Establishment-Targeting Lists for Emphasis Programs

### Introduction

Various OSHA directives governing National, Regional, and Local Emphasis Programs explain how an inspection list must be compiled, ordered, and randomized. This memorandum provides additional instruction on generating and randomizing these establishment-targeting lists. If the instructions in this memorandum conflict with the instructions contained in an Emphasis Program directive, the Area Office must attach this memorandum to the Emphasis Program's targeting list and include it in any request for a warrant authorizing an inspection to be conducted pursuant to the Program.

The April 21, 2014, memorandum *Generation and Randomization of Inspection Targeting Lists* is rescinded.

### List Generation and Randomization

1. For National, Regional and Local Emphasis Programs, the National Office's Office of Statistical Analysis (OSA) will prepare a Master List for each Area Office, using OSA's most current establishment file. OSA will apply the industry and establishment-size criteria prescribed by the particular Emphasis Program to select all eligible establishments. OSA will assign a random number to each establishment on the OSA-generated Master List and provide the Master List to the Area Office, sorted in random number order.

   OSA updates the establishment file every six months.

2. Area Offices may add establishments to the OSA-generated Master List, based on sources that may include, but are not limited to: (a) commercial directories; (b) telephone listings; (c) local knowledge establishments, derived from previous OSHA inspection history; and (d) information from other government agencies, such as the local Health Department. The Area Office must retain documentation of every addition made to the Master List and, prior to use, the revised List must be re-randomized -- either by OSA or by the Area Office using the RANDBETWEEN function in Microsoft Excel.

3. Outside of manufacturing, the OSA establishment file is limited to certain industries and to establishments with 10 or more employees and, consequently, may not be appropriate for generating some Local Emphasis Programs. If a Local Emphasis Program or a Regional Emphasis Program covers industries not included in the OSA establishment file, the Area Office may generate its own master list (see number 2 above for potential sources). The Area Office may provide the list to the National Office for assignment of random numbers or the Area Office may assign random numbers to the list using the RANDBETWEEN function in Microsoft Excel.

### ListGen Webpage

The Office of Statistical Analysis (OSA) has automated the process of compiling, randomizing and delivering NEP and LEP inspection targeting lists (i.e. Master Lists) to the field offices. Area Offices can access and download their Master Lists from the ListGen webpage. The selection criteria for the Agency's National Emphasis Programs are preloaded within the application. Area Offices can load the selection criteria for their Local Emphasis Programs.

The ListGen application uses Oracle's "DBMS __ Random" tool to assign random numbers to the list.

An Area Office should generate only one list per emphasis program for a given file. The application selects and returns ALL establishments meeting the selection criteria (it does not sample). Multiple lists generated from the same file would return the same establishments. The file date is displayed within the system and on the generated reports and the application will provide a warning if a second list for a given program is generated from the same file.

The Area Office may print and export the Master List. Once created, Master Lists remain available within the system.

[Paragraph removed. For internal OSHA use only.]

**NAICS Coding**

NAICS codes are updated and modified every five years. This introduces the potential of having different sets of NAICS codes for the scope of the emphasis program and the make-up of the establishment file. For example, the current establishment file used by OSA is based on 2012 NAICS codes, while several emphasis programs use 2007 NAICS codes to define their industry scope. When this issue arises, the Area Office should use the U.S. Census concordance tables at http://www.census.gov/cgi-bin/sssd/naics/naicsrch?chart=2012 to identify any relevant differences between the two coding systems. The appropriate establishment file codes will then be used to generate the master list. Any variance from the list of industries included in the directive should be documented and attached to the inspection targeting lists.

**Cycle Generation**

A "cycle" is a subset of establishments from the Master List and allows the Area Office to use its enforcement resources more efficiently: rearranging establishments' order within a cycle is reasonable, because it furthers OSHA's legitimate goal of efficient allocation of inspection resources.

The Area Office can schedule inspections in the following manners:

1) If the Area Office intends to inspect the entire Master List, it can schedule the inspections in any order. If the Area Office uses this method, it must account (through inspections and deletions) for the entire list. The Area Office cannot inspect off a new list until the entire previous list is completed.

2) The Area Office can inspect the facilities in the random number order provided. If the Area Office uses this method it does not need to complete the entire Master List.

3) The Area Office can create cycles by choosing a set number of establishments from the Master List, sorted in random number order. For example, the Area Office can select the first ten establishments on the Master List, sorted by ascending random number as a first cycle of 10 establishments. The Area Office can then inspect those establishments in any order, but must finish the cycle prior to beginning a second cycle. Once the first cycle is complete, the Area Office can inspect the next ten establishments on the randomized Master List as its second cycle.

**Deletions**

Most NEPs and LEPs are based on industry selection criteria. Selection of establishments relies on the industry coding provided in the universe establishment file (currently the D&B file). The industry coding of establishments in the universe file reflects reasonable groupings of particular establishments within appropriate categories based on information available to the publisher of the file. This also applies to other file data elements such as employment size, physical address, or operating status (for example the facility may be recently closed or out-of-business). As part of an Area Office's pre-inspection research, a thorough web-search of the facility may be conducted to determine if there is viable evidence showing the establishment falls outside of the emphasis program's selection criteria. Based on evidence found, the Area Office may delete the establishment from the targeting list and must provide documentation of the reason for the deletion and the source of the information relied upon. This documentation should be kept as an attachment to the targeting list.

**New LEPs. REPs and NEPs**

As new LEPs, REPs, and NEPs are developed, the guidance of this memorandum must be inserted in the section of the directive that prescribes how to generate and randomize inspection-targeting lists. OSHA's National Office will update Appendix C of CPL 02-00-025, *Scheduling System for Programmed Inspections* (January 4, 1995) to include this guidance.

---

# UNITED STATES
# DEPARTMENT OF LABOR

Occupational Safety & Health Administration

200 Constitution Ave NW

Washington, DC 20210

📞 800-321-6742 (OSHA)

TTY

www.OSHA.gov

**FEDERAL GOVERNMENT**

White House

Severe Storm and Flood Recovery Assistance

Disaster Recovery Assistance

DisasterAssistance.gov

USA.gov

No Fear Act Data

U.S. Office of Special Counsel

**OCCUPATIONAL SAFETY & HEALTH**

Frequently Asked Questions

A - Z Index

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
IN THE MATTER OF

  ESTABLISHMENT INSPECTION OF:   File No. 21-M-726 (LB)

ROYAL HOME IMPROVEMENTS, INC.
2317 Avenue K
Brooklyn (Kings County), New York 11210

1191 E. 22nd Street
Brooklyn (Kings County), New York 11210

1485 E. 21st Street
Brooklyn (Kings County), New York 11210
---------------------------------------------------------------

## <u>DECLARATION PURSUANT TO 28 U.S.C. § 1746</u>

  I, JAMES NG, declare under penalty of perjury that the following is true and correct:

  1. I am a Compliance Safety and Health Officer ("CSHO") with the Manhattan Area Office of the Occupational Safety and Health Administration, United States Department of Labor ("OSHA"). I am fully familiar with the facts and circumstances of this case. I submit this Declaration in support of the Secretary of Labor's Ex-Parte Application for an Inspection Warrant in this matter.

  2. The primary duty of my position is to conduct workplace investigations to ascertain if employers are in compliance with the safety and health standards promulgated under the Occupational Safety and Health Act of 1970.

  3. On April 7, 2021, I was assigned by supervisor, Assistant Area Director Janet Drogowski, to survey construction worksites to create a local targeting list pursuant to OSHA Region II's Regional Emphasis Program – Construction Sites – Local Targeting

(Directive No. 2019-06). I worked with another CSHO from the Manhattan Area Office to survey an area in Brooklyn, New York with Avenue K as the north border, Kings Highway as the south and east borders, and Ocean Parkway as the west border. A map showing the target area is attached as Exhibit 1.

4.      I began the mapping process from the northeast intersection between Avenue K and Ocean Parkway and travelled the roadway by car in a north-to-south or south-to-north direction. In some instances, I had to make detours to go to a worksite in between the north-south roadway or to travel around a dead-end street. I performed this mapping process on April 8, 9, 14 and 15, 2021.

5.      The mapping process consisted of driving around the selected geographical area looking for signs of construction sites including, but not limited to, any construction activities, NYC Department of Building permits, scaffolding, construction fences, construction equipment and construction waste dumpsters. Once I identified a construction site, I recorded the construction site's address, activity status, type of construction (*i.e.* new construction or gut rehabilitation construction), floor number, end use of the building (*i.e.* residential, commercial, or mix-use), and any additional notes as needed.

6.      On April 8, 2021, during my mapping process, I observed a construction site located at 2317 Avenue K that had a sign posted on the front door that read: "For all OSHA inspections, Please call our office to make an appointment. Royal Home Improvements, Inc. 718-677-5641".

7.      The result of the mapping process was a Local Construction Targeting List containing 191 construction sites at various stages of completion. The list includes three

construction sites that are controlled by Royal Home Improvements, Inc. ("Royal Home") and that have not yet been inspected by OSHA under this Targeting List: (1) 2317 Avenue K; (2) 1191 E. 22nd Street; and (3) 1485 E. 21st Street in Brooklyn, New York.

8.     On June 11, 2021, I observed and photographed at all three worksites listed in ¶ 7 signs posted reading "For all OSHA inspections, Please call our office to make an appointment.  Royal Home Improvements, Inc. 718-677-5641".  Copies of the photographs that I took at 2317 Avenue K, 1191 E. 22nd Street and 1485 E. 21st Street are attached as Exhibits 2, 3 and 4 respectively.


I submit this Declaration in support of the Secretary of Labor's Application for an Inspection Warrant.  I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed on this 21st day of June 2021


*James Ng*
_____
JAMES NG, Compliance Officer
Occupational Safety & Health Administration
Manhattan OSHA Area Office
201 Varick Street, Room 908
New York, NY 10014

# Exhibit 1



Map data ©2021 Google    2000 ft

# Exhibit 2





For all OSHA inspections,
Please call our office to make an appointment.

Royal Home Improvements,
Inc.718-677-5641

COMMUNICATION PLAN

Do not enter without proper PPE
Do not enter without safety monitory permission

STOP



# Exhibit 3





718-677

NYC Buildings
Work Permit Department Of B...

NYC Buildings
Work Permit Department of Buildings

1191

For all OSHA inspections,
please call our office to make an
appointment.

Royal Home Improvements,
Inc.718-677-5641

STOP

COMMUNICATION PLAN
Attention all Visitors/ Workers/ Personnel

Do not enter without proper PPE

# Exhibit 4



1485
14

For all OSHA inspections,

Please call our office to make an
appointment.

Royal Home Improvements, Inc.

718-677-5641

ROYAL
BUILDERS



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
IN THE MATTER OF

     ESTABLISHMENT INSPECTION OF:       File No.  21-M-726 (LB)

ROYAL HOME IMPROVEMENTS, INC.
2317 Avenue K
Brooklyn (Kings County), New York 11210

1191 E. 22nd Street
Brooklyn (Kings County), New York 11210

1485 E. 21st Street
Brooklyn (Kings County), New York 11210
-------------------------------------------------------------

## DECLARATION PURSUANT TO 28 U.S.C. § 1746

     I, ZHAO HONG HUANG, declare under penalty of perjury that the following is true and correct:

     1.    I am a Compliance Safety and Health Officer ("CSHO") with the Manhattan Area Office of the Occupational Safety and Health Administration, United States Department of Labor ("OSHA").  I am fully familiar with the facts and circumstances of this case.  I submit this Declaration in support of the Secretary of Labor's Ex-Parte Application for an Inspection Warrant in this matter.

     2.    The primary duty of my position is to conduct workplace investigations to ascertain if employers are in compliance with the safety and health standards promulgated under the Occupational Safety and Health Act of 1970.

     3.    In spring 2021, I was assigned by my supervisor, Assistant Area Director Janet Drogowski, to conduct inspections of four construction worksites that were listed on the Manhattan Area Office's Local Construction Targeting List that was created under

OSHA Region II's Regional Emphasis Program – Construction Sites – Local Targeting (Directive No. 2019-06). One of the worksites I was assigned to inspect was located at 1901 Ocean Avenue, Brooklyn, NY ("the Ocean Avenue worksite").

4. I attempted to open an inspection of the Ocean Avenue worksite on June 2, 2021. The Ocean Avenue worksite is a new eight-story apartment building. When I arrived at the Ocean Avenue worksite, I spoke to a foreman who introduced himself as "Tom" from Royal Home Improvements, Inc. ("Royal Home"). He told me that I had to call the company's office to schedule an appointment for an OSHA inspection. I informed him that OSHA does not schedule appointments. He again told me to call the office.

5. I then called the Royal Home's office and spoke with Steve Haddad, Construction Superintendent. Mr. Haddad insisted that OSHA has to schedule an appointment for an inspection for another day. I told Mr. Haddad that OSHA does not schedule appointments to conduct inspections, but he was adamant that he would not allow OSHA to inspect without making an appointment in advance. Due to Royal Home's denial of entry, I was unable to inspect the Ocean Avenue worksite that day. Because the construction project was in its final stages, I was unable to inspect the Ocean Avenue worksite before the work was all but completed.

6. While I was at the Ocean Avenue worksite, I observed signs posted that read, "For all OSHA inspections, Please call our office to make an appointment. Royal Home Improvements, Inc. 718-677-5641". Copies of photographs of the signs are attached as Exhibit 1.

I submit this Declaration in support of the Secretary of Labor's Application for an Inspection Warrant. I declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 21st day of June 2021

*Zhao Hong Huang*

ZHAO HONG HUANG, Compliance Officer
Occupational Safety & Health Administration
Manhattan OSHA Area Office
201 Varick Street, Room 908
New York, NY 10014

# Exhibit 1



FOR ACCESS AND
DELIVERIES TO SITE
PLEASE CALL ABE
(347)-749-6775
(718) 600-3591
Tom: 917-621-6447

For all OSHA inspections,
Please call our office to make an
appointment.

Royal Home Improvements, Inc.
718-677-5641



ROYAL BUILDERS

**CONTROLLED ACCESS ZONE**

For all OSHA inspections,

Please call our office to make an appointment.

Royal Home Improvements, Inc.

718-677-5641

**ROYAL BUILDERS**